2020 IL App (1st) 181465-U
No. 1-18-1465
September 28, 2020

FIRST DIVISION

**NOTICE**: This order was filed under Supreme Court Rule 23 and may not be cited as precedent by any party except in the limited circumstances allowed under Rule 23(e)(1).

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, ) | | Appeal from the Circuit Court Of Cook County. |
| | ) | |
| Plaintiff-Appellee, | ) | |
| | ) | No. 14 CR 3811 |
| v. | ) | |
| | ) | The Honorable |
| JAMES WILSON, | ) | Ursula Walowski, |
| | ) | Judge Presiding. |
| Defendant-Appellant. | ) | |

PRESIDING JUSTICE WALKER delivered the judgment of the court.
Justices Pierce and Coghlan concurred in the judgment.

**ORDER**

¶ 1    *Held*: The trial court did not abuse its discretion when it denied the motion for a new trial based on newly discovered evidence where the new witness's testimony is not of such a conclusive character that it will probably change the result on retrial.

¶ 2    A jury found James Wilson guilty of first degree murder and the trial court sentenced him to 50 years in prison. Wilson argues on appeal that the trial court should have granted his motion for a new trial because of newly discovered evidence. We find the new evidence not so conclusive as to require a new trial. We affirm the trial court's judgment.

¶ 3                                    **I. BACKGROUND**

¶ 4        At approximately 5 p.m. on December 19, 2013, Moayad Nassan, manager of a food mart at Chicago Avenue and Central Avenue, saw Barnett Adams speaking angrily with another customer. Adams and the other man left the store. The two men faced each other on the sidewalk in front of the store and threw punches. Adams connected, knocking the other man onto his back. The man on the ground drew a gun and fired at Adams, hitting him several times. After the shooter left, some men brought Adams into the store where they tried to save him, but Adams died from the gunshot wounds.

¶ 5        Police arrived shortly and interviewed people at the scene. Nassan described the shooter and told Detective Michael Kennedy he had never seen the shooter before. Police sought to find the shooter by using a "buy bust." Undercover officers made narcotics purchases in the area of Chicago and Central. Police arrested the narcotics sellers and asked the sellers for information about the shooting. Based on the information that the sellers provided, police had Nassan view a photo lineup that included a picture of Wilson. Nassan made no identification from the photos. When police arranged a lineup in person at the police station, Nassan identified Wilson as the shooter. A grand jury indicted Wilson on a charge of first degree murder.

¶ 6        At the jury trial, Nassan admitted that he now recognized Wilson as a person who had come into his store a few times before December 2013. Nassan admitted that he told police the shooter was about 6 foot 1, and Wilson stood at only 5 foot 9.

¶ 7        Steven Jackson, another employee of the store, testified that he saw Wilson approach Adams in the store. Jackson saw the punch that knocked Wilson to the ground, and then

Jackson heard gunshots. He identified Wilson in a lineup as the person who argued with Adams. Jackson recognized several of the customers in the store at the time of the shooting, including Charles Davis.

¶ 8     Davis testified that on December 19, 2013, he heard Wilson arguing with Adams, and he saw Wilson shoot Adams. Davis testified that Wilson then got into a light colored Infiniti and drove off. Davis admitted that he faced a charge of selling heroin, and he hoped prosecutors would look favorably on him because of his testimony against Wilson. Davis also admitted that he did not speak with police at the scene after the shooting. He testified that police told him to leave without first asking what he saw. At the scene, Davis spoke to some of the others who witnessed the shooting, including Kacy Reed.

¶ 9     Reed testified that he stood outside the store when Wilson drove up in a car with several passengers. Wilson went into the store and spoke with Adams, then both came out, fists raised. Adams decked Wilson with a single punch. Wilson started shooting and Reed ran. Reed did not see anyone else at the scene with a gun. Reed returned to the scene after Wilson left.

¶ 10    Timothy Moore testified that he also saw the argument inside and the fight outside the store. Moore testified that when gunshots came from the area where Wilson fell, Moore ducked into the store. Police arrested Moore on a drug charge on December 20, 2013, the day after the shooting. Police released Moore without charging him for any narcotics offense after Moore identified Wilson as the shooter.

¶ 11        Detective Kennedy testified that police never tell witnesses at the scene to leave before the police have taken statements from them. According to Kennedy, Nassan told him the shooter left in a red car.

¶ 12        The jury found Wilson guilty of first degree murder. Before the sentencing, Wilson discovered another witness. The court heard testimony from Dennis Shields at a hearing on Wilson's motion for a new trial.

¶ 13        Shields testified that on December 19, 2013, he was walking on Central, approaching Chicago, when he heard gunshots. He reached the corner and saw a crowd on Chicago by the food store. He stood on the corner as the light changed a few times, and then he walked past the store. He saw a man run to the alley carrying a gun. Shields knew Wilson, and he was sure the man he saw with the gun was not Wilson. Shields also saw a car rushing past him on Chicago Avenue and turning on Central. Shields saw three men in the car, but did not see Wilson.

¶ 14        The court denied the motion for a new trial, finding that Shields's testimony was not so conclusive that it would probably change the result of the trial. Wilson now appeals.

¶ 15                                           **II. ANALYSIS**

¶ 16        On appeal, Wilson argues that the trial court should have granted his motion for a new trial so that a jury could hear the newly discovered evidence of Shields's testimony. "In Illinois, newly discovered evidence warrants a new trial when: (1) it has been discovered since the trial; (2) it is of such a character that it could not have been discovered prior to the trial by the exercise of due diligence; (3) it is material to the issue but not merely cumulative; and (4) it is of such a conclusive character that it will probably change the

result on retrial. *** [T]he denial of a motion for a new trial based on newly discovered evidence will not be disturbed on appeal absent an abuse of discretion." *People v. Williams*, 295 Ill. App. 3d 456, 462 (1998).

¶ 17    Shields's testimony does not directly contradict any of the State's witnesses. Shields admitted that he came to the scene after the shooting. He waited at the corner for a few minutes before coming to the store, and only then did he see a man carrying a gun running into an alley. Shields admitted that because he did not see the shooting, he did not know whether the man he saw with a gun committed the murder. While he saw one car drive past without Wilson, he did not see every car that left the area between the shooting and the time he reached the store. His testimony does not show that Wilson had not been at the store. Shields's testimony does not show that Wilson did not commit the murder. We cannot find that the trial court abused its discretion when it denied the motion for a new trial because Shields's testimony was not "of such conclusive character that it will probably change the result on retrial." *People v. Baker*, 16 Ill. 2d 364, 374 (1959).

¶ 18                                    **III. CONCLUSION**

¶ 19    The trial court did not abuse its discretion when it denied the motion for a new trial based on the newly discovered testimony of Shields. Accordingly, we affirm the trial court's judgment.

¶ 20    Affirmed.